IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 3, 2023 Session

## MARQUICA L. BEASLEY ET AL. v. JAE NAILS BAR, LLC

**Appeal from the Circuit Court for Davidson County**
**No. 19C1530          Thomas W. Brothers, Judge**
_____

### No. M2022-01330-COA-R3-CV
_____

This is a premises liability action in which the plaintiff slipped and fell while she was walking to a pedicure station in a nail salon. Two principal issues are presented. First, the plaintiff contends that the trial court erred by denying her Tenn. R. Civ. P. 34A.02 motion for spoliation of evidence by finding that the defendant was not put on notice that a video recording from a surveillance camera in the nail salon was relevant to pending or reasonably foreseeable litigation. Second, the plaintiff contends that the trial court erred by summarily dismissing her complaint on the basis that there was no proof that the defendant had created the allegedly hazardous condition in the nail salon or that the defendant had actual or constructive notice of the condition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Luvell L. Glanton, Nashville, Tennessee, for the appellants, Marquica L. Beasley and Trent Beasley.

Colin B. Calhoun, Nashville, Tennessee, for the appellee, Jae Nails Bar, LLC.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

Marquica Beasley ("Mrs. Beasley") and her husband, Trent Beasley ("Mr. Beasley") (or collectively "Plaintiffs"), brought this personal injury action on the basis of negligence and loss of consortium after an incident that occurred at a nail salon owned and operated by Jae Nails Bar, LLC ("Defendant").[1] On July 12, 2018, Mrs. Beasley and her

_____

[1] Defendant provides manicure and pedicure services.

16-year-old daughter were at Jae Nails Bar when Mrs. Beasley was called back to receive a pedicure. As she walked to the pedicure station, Mrs. Beasley slipped on the tile floor. The salon manager, Kiet Luc ("Mr. Luc"), heard "what sounded like a fall" and observed Mrs. Beasley sitting on the tile floor of the salon. Mr. Luc offered to assist Mrs. Beasley in getting up, but she declined, getting up on her own.

Mrs. Beasley did not leave immediately following her fall; instead, she remained at the salon and received a pedicure. Mrs. Beasley later testified that by the time her pedicure service was complete, "the right side of my ankle and right side of my foot . . . the whole area [was] swollen. . . . I just remember my foot wouldn't go all the way back into my shoe and it was time for me to go to the doctor."

Mrs. Beasley also testified to a "dust" or "residue . . . all on the palm of my hand, on the back of my pants, on my elbows, . . . on the bottom of my shoes, everywhere." Mrs. Beasley's daughter testified to seeing "dust on my mother's clothes, hands, and arms" and that she "helped brush some of the debris off her clothes." As she was leaving the salon, Mrs. Beasley took a photo of the residue on the floor, which was later introduced as an exhibit. However, Mrs. Beasley stated that the photo did not reveal the amount of dust that was on the floor at the time that she fell. She did not take photographs of the dust on her clothing.

Mr. Luc testified that he "inspected the floor and did not observe any slippery or dangerous condition on the surface of the tile floor where Mrs. Beasley's fall occurred." Angie Hoang, the owner of the salon, arrived at the salon after Mrs. Beasley's fall and had the same observations about the floor as Mr. Luc.

Mrs. Beasley never returned to Defendant's salon and neither she nor her counsel communicated with Defendant following the incident until after this action was commenced.

On June 28, 2019, Plaintiffs filed their complaint, asserting a claim based on premises liability and loss of consortium. Defendant filed its answer on March 23, 2020, asserting as defenses, inter alia, failure to state a claim, assumption of risk, and lack of notice of the dangerous condition.

During discovery, Plaintiffs learned that Defendant had a surveillance camera that monitored the interior of the salon, but that the video recording of the day in question was overwritten as a matter of course six months after the incident. Consequently, in December 2021, Plaintiffs filed a "Motion for Curative Action to Remedy TRCP 34A.02 Violations," alleging spoliation of video evidence from cameras that monitored the nail salon. Specifically, in response to Defendant's statement that it was "not in possession of any footage captured in July of 2018, as the captured video is automatically overwritten every six months," Plaintiffs argued that "at the time the evidence was destroyed, Jae Nails Bar,

LLC knew or should have known that the evidence was relevant to reasonably foreseeable litigation." Plaintiffs also argued that "Defendant either intentionally caused and/or negligently or inadvertently allowed for critical evidence of camera footage showing the fall and surrounding conditions to conveniently disappear or be discarded." Then on June 21, 2022, Plaintiffs filed a second "Motion for Spoliation and Curative Action to Remedy TRCP 34A.02 Violations" that included additional testimony from Mr. Luc regarding the surveillance system, stating that he "almost never checks" and "never watched any" of the camera footage.

Pursuant to an order entered on July 26, 2022, the court found that "Rule 34A.02 sanctions are not appropriate" in this case because

> there is nothing in the record to suggest that Jae Nails Bar knew or should have known that the video tape in the case at hand was relevant to pending or reasonably foreseeable litigation as they were not put on notice that the Plaintiff was injured to the extent that she planned to file a lawsuit.

Furthermore, the court noted that the complaint "was not filed until almost a year after the fall at issue and [neither] the Plaintiff nor her counsel contacted the defendant after the date of injury to let them know that a lawsuit was imminent." The court further found "no evidence that the video tape was erased with any intentional or fraudulent intent to conceal any evidence."

In the interim, on May 13, 2022, Defendant filed a motion for summary judgment on the ground that "it did not have actual or constructive knowledge of any hazardous condition on the surface of the tile floor which allegedly caused Mrs. Beasley's fall." Plaintiffs timely filed a response in opposition to the motion.

Pursuant to an order entered on August 23, 2022, the trial court granted Defendant's motion for summary judgment. The relevant portion of the trial court's order granting summary judgment reads as follows:

> Reviewing the evidence in the light most favorable to the non-moving party, and drawing all reasonable inferences in favor of the non-moving party, the Court finds as follows:

> > In order for an operator or owner of a property to be held liable for negligence in allowing a dangerous of defective condition, the plaintiff must show that the condition was caused or created by the owner, operator or agent or if the condition was created by someone else that the owner or operator had actual or constructive knowledge that the condition existed prior to the

accident. *Blair v West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004).

The Court finds that it is undisputed that the defendant remodeled the premises. The Court also finds that it is undisputed that the remodeling was completed in May of 2018. (Deposition of Angie Hoang page 9, line 15.) The incident in the case at hand occurred on July 12, 2018. The Court further finds that it is disputed what if any substance was on the floor which made the Plaintiff fall, however, the Court does not need to determine this issue as the Court finds that there is no proof that the defendant created the condition or had actual or constructive notice of any condition. Even taking as true the Plaintiff's statement that there was a residue of some sort on the back of her black pants and shirt, the Court finds that there is no proof how long any alleged dust and/or other fibrous substance was on the floor or how it got on the floor. Based on all of the foregoing, the Court finds that there is no genuine issue of material fact and that Defendant has negated an essential element of Plaintiffs' claim. Therefore, Defendant is entitled to judgment as a matter of law.

This appeal followed.

## ISSUES

The issues presented, which we have rephrased and consolidated, are:[2]

1. Whether the trial court abused its discretion and erred in denying Plaintiffs' Motion for Spoliation and Curative Action to Remedy Tenn. R. Civ. P. 34A.02 Violations?

---

[2] Plaintiffs raised a third issue, "Did the trial court error by granting Defendant's motion for summary judgment by making a finding that was not argued by Defendant and was not supported by the record?" However, Plaintiffs failed to present a meaningful argument with citations to authorities in their brief. *See* Tenn. R. App. P. 27(a)(7)(A). Thus, this issue is waived. *See Sneed v. Bd. of Prof'l Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."); *see also Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure of a party to cite to any authority or to construct an argument regarding his or her position on appeal constitutes waiver of that issue).
.

2. Whether the trial court erred in granting Defendant's Motion for Summary Judgment on the basis that there was "no proof" regarding how long any debris had been present on the floor, despite the fact that Tennessee case law allows a jury to consider contextual facts beyond merely the exact time an unreasonably unsafe condition was created on a floor?

**ANALYSIS**

I.    SPOLIATION OF EVIDENCE

Plaintiffs contend that the trial court abused its discretion when it denied their Motion for Spoliation and Curative Action to Remedy Tennessee Rule of Civil Procedure 34A.02 Violations. More specifically, Plaintiffs submit that the trial court abused its discretion by reaching a decision based on a "clearly erroneous assessment of the evidence," citing *Wright ex rel. Wright v. Wright*, 337 SW 3d 166, 176 (Tenn. 2011).

Tennessee Rule of Civil Procedure 34A.02 provides that "Rule 37 sanctions may be imposed upon a party or an agent of a party who discards, destroys, mutilates, alters, or conceals evidence."[3] Tennessee courts may impose a range of sanctions under Rule 37.02 for violation of a discovery order. *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 744 (Tenn. 2015); *see* Tenn. R. Civ. P. 37.02. These sanctions may include, inter alia, an order precluding the offending party from maintaining a claim or defense, an order establishing certain facts as true, an order striking pleadings or portions of pleadings, and entry of a default judgment against the disobedient party. *Id.* In *Tatham*, our Supreme Court stated as follows:

> The determination of whether a sanction should be imposed for the spoliation of evidence necessarily depends upon the unique circumstances of each case.

---

[3] As is explained in *Tatham*, 473 S.W.3d at 744:

Prior to Rule 34A.02, Rule 37 sanctions were limited to failures to comply with discovery orders and, therefore, generally were not available for the spoliation of evidence occurring prior to any such order. *See* Tenn. R. Civ. P. 37; *Alexander,* 156 S.W.3d at 15 (noting that Rule 37 does not "explicitly provide for sanctions for discovery abuse absent a court order"). Notably, however, in *Mercer* and *Lyle,* this Court upheld the inherent power of trial courts to impose sanctions to prevent abuse of the discovery process even while recognizing the fact that such sanctions were not expressly authorized by the Rules of Civil Procedure. *Mercer,* 134 S.W.3d at 133; *Lyle,* 746 S.W.2d at 699; *see also Alexander,* 156 S.W.3d at 15. Thus, the adoption of Rule 34A.02 effectively codified the inherent authority already recognized by Tennessee courts to impose sanctions during the discovery process. *See Gross,* 2007 WL 3171155, at *6 (noting that, although Rule 34A.02 did not apply at the time of trial, "under both the pre-amendment and post-amendment rule, the court has broad discretion in deciding what sanctions, if any, are appropriate").

Factors which are relevant to a trial court's consideration of what, if any, sanction should be imposed for the spoliation of evidence include:

> (1) the culpability of the spoliating party in causing the destruction of the evidence, including evidence of intentional misconduct or fraudulent intent;

> (2) the degree of prejudice suffered by the non-spoliating party as a result of the absence of the evidence;

> (3) whether, at the time the evidence was destroyed, the spoliating party knew or should have known that the evidence was relevant to pending or reasonably foreseeable litigation; and

> (4) the least severe sanction available to remedy any prejudice caused to the non-spoliating party.

473 S.W.3d at 746–47 (footnote omitted).

It is within the broad discretion of a trial court to impose sanctions for the purpose of preserving the integrity of the discovery process. *Id.* at 742 (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004)). The authority of the trial court to impose sanctions "is rooted in the trial court's inherent power to ensure the proper administration of justice." *Id.* (citing *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1998)). "Trial court decisions on pretrial discovery disputes are reviewed using an abuse of discretion standard." *Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 210 (Tenn. 2019) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Thus, we review a trial court's discretionary decision concerning the spoliation of evidence pursuant to the abuse of discretion standard of review.

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported

- 6 -

by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions.

*Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020) (quoting *Lee Med., Inc.*, 312 S.W.3d at 524–25 (citations omitted)).

In Mrs. Beasley's affidavit in support of her motion, she testified that she yelled when she fell, at which time her daughter and Mr. Luc came to her assistance. As Mrs. Beasley explained in her deposition, she remained at the salon and received a pedicure, during which she informed her attendant that she was experiencing pain and requested that the attendant avoid rubbing the swollen area of her foot.[4] This was supported by the testimony of Mrs. Beasley's daughter, who testified that Mrs. Beasley complained about being injured while they remained at the nail salon.

It is undisputed, however, that no one notified Defendant, either on the day of the incident or at any time prior to the commencement of this action, that a claim or law suit was contemplated. Moreover, it is undisputed that no one notified Defendant to preserve any evidence in anticipation of a possible law suit.

For its part, Defendant insists that Plaintiffs' contentions lack a compelling reasoning for the imposition of sanctions for several reasons, including, but not limited to, the following:

---

[4] Mrs. Beasley's deposition testimony on this issue reads:

Q. Did you tell [Mr. Luc] that, you felt you were injured?
A. I don't remember having a conversation with [Mr. Luc], you know, after that. Maybe I had told him I was going to the doctor, but I can't remember if my leg was swelling or if I mentioned it to the pedicure lady. I can't recall that part.
Q. So at the time of the fall you had not actually had the pedicure, correct?
A. Correct.
Q. And that is the purpose you were there to get a pedicure?
A. Correct.
Q. And did you go ahead and proceed with getting the pedicure?
A. I did, and I told her she had to speed the pedicure up and stop touching the right part of my ankle. As she was doing it, that's when the swelling was getting more severe.
Q. So you told her to not touch where?
A. I told her she had to hurry up, I'm going – that's when I'm thinking I told her I was going to have to go to the doctor because she couldn't touch the area anymore.

(1) At no point in time after Mrs. Beasley's fall did she or anyone acting on her behalf contact Defendant and advise that she would be pursuing a personal injury claim;

(2) At no point in time after Mrs. Beasley's fall did she or anyone acting on her behalf submit an "evidence preservation request" to Defendant regarding video surveillance camera footage or anything else;

(3) Defendant had no notice that Plaintiffs were pursuing personal injury and loss of consortium claims against it until 2020;[5] and

(4) Any video surveillance camera footage capturing Mrs. Beasley's fall would have been overwritten after six months as a matter of routine operating procedure;

In its order denying the motion, the trial court stated that it considered the factors set forth in *Tatham*, 473 S.W.3d at 734, and concluded that Rule 34A.02 sanctions were not appropriate for the following reasons:

Pursuant to the *Tatham* case, the Court must look at the totality of the circumstances. The Court finds that there is nothing in the record to suggest that Jae Nails Bar knew or should have known that the video tape in the case at hand was relevant to pending or reasonably foreseeable litigation as they were not put on notice that the Plaintiff was injured to the extent that she planned to file a lawsuit. The Complaint in the case at hand was not filed until almost a year after the fall at issue and [neither] the Plaintiff nor her counsel contacted the defendant after the date of injury to let them know that a lawsuit was imminent. In addition, the Court finds that there is no evidence that the video tape was erased with any intentional or fraudulent intent to conceal any evidence.

As noted earlier, Plaintiffs submit that the trial court abused its discretion by reaching a decision based on a "clearly erroneous assessment of the evidence." Furthermore, as argued in their brief on appeal, Plaintiffs contend that

[b]ecause the trial court concluded that there was not a scintilla of evidence to suggest that Defendant was put on notice of the seriousness of Plaintiff's injury, the trial court deprived the Plaintiffs the right to have the trial court determine whether Defendant's conduct could have risen to the degree to have warranted spoliation sanctions.

---

[5] The action was commenced in 2019, but Defendant insists that it did not receive notice of the filing of the complaint until 2020 due to lack of service of process.

It is apparent that Plaintiffs have misconstrued the court's factual findings, as the court did not state that "there was not a scintilla of evidence." Instead, the court found that there is nothing in the record to suggest that Jae Nails Bar knew or should have known that the video tape in the case at hand was relevant to pending or reasonably foreseeable litigation as they were not put on notice that the Plaintiff was injured to the extent that she planned to file a lawsuit. Indeed, there is evidence that Mrs. Beasley fell, that she experienced pain, and that she planned to see a doctor. However, this evidence is insufficient to establish that Defendant "knew or should have known that the [video recording] was relevant to pending or reasonably foreseeable litigation." *See Tatham*, 473 S.W.3d at 747.

Moreover, as Defendant correctly notes, there is no evidence of intentional destruction of evidence. As a routing practice, digital recordings taken by the surveillance cameras in the nail salon are automatically overwritten every six months. This is significant because sanctions for spoliation "[do] not arise where the destruction was a matter of routine with no fraudulent intent." *Thurman-Bryant Elec. Supply Co., Inc. v. Unisys Corp., Inc.*, No. 03A01-CV00152, 1991 WL 222256, at *5 (Tenn. Ct. App. Nov. 4, 1991); *see also Tatham*, 473 S.W.3d at 741 ("Since *Thurman–Bryant,* the Court of Appeals repeatedly has emphasized that such negative inference may be drawn only where 'the spoliation occurs in circumstances indicating fraud and a desire to suppress the truth' but not where 'the destruction was a matter of routine with no fraudulent intent'") (citations omitted).

Considering the unique circumstances of this case, *see Tatham*, 473 S.W.3d at 746, including the absence of evidence suggesting that Defendant was culpable for causing the destruction of the video recording, along with the absence of evidence indicating that Defendant knew or should have known that the video recording was relevant to pending or reasonably foreseeable litigation, we find no abuse of discretion with the trial court's decision to deny Plaintiffs' Rule 34A.02 motion.

## II.    SUMMARY DISMISSAL

Plaintiffs also contend that the trial court erred by granting Defendant's motion for summary judgment. More specifically, they contend that the court erred by finding that there was "no proof" regarding how long any debris had been present on the floor, despite the fact that Tennessee case law allows a jury to consider contextual facts beyond merely the exact time that an unreasonably unsafe condition was created on a floor.

This Court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citations omitted). Accordingly, this court must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997).

In so doing, we accept the evidence presented by the nonmoving party as true, consider the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. R.R. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). As our Supreme Court explained in *Rye*:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

477 S.W.3d at 264 (emphasis in original).

To recover under a theory of premises liability, the plaintiff must establish the elements of negligence, including: 1) a duty of care owed by the defendant to the plaintiff; 2) conduct below the applicable standard of care that amounts to a breach of that duty; 3) an injury or loss; 4) cause in fact; and 5) proximate, or legal, cause. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

For the owner or operator of a premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator or his agent, or 2) if the condition was created by someone other than the owner, operator or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004) (citations omitted). The relevant legal principles are further explained in *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341 (Tenn. 2014) as follows:

> "Business proprietors are not insurers of their patrons' safety." *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). Property owners are, however, required to exercise due care under all the circumstances. *Blair*, 130 S.W.3d at 764. This general duty of due care imposes upon a property owner the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware

- 10 -

through the exercise of reasonable diligence. *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994). A property owner's duty does not include, however, "the responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." *Rice v. Sabir*, 979 S.W.2d 305, 308-09 (Tenn. 1998) (citations and internal quotation marks omitted). . . . Thus, persons seeking to prevail against a property owner on a premises liability claim must prove the elements of a negligence claim, **and in addition**, must prove either that "the condition was caused or created by the owner, operator, or his agent," or "if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Blair*, 130 S.W.3d at 764.

*Id.* at 350 (emphasis in original) (footnote omitted).

As noted earlier, the trial court found that it was undisputed that Defendant had hired a contractor to remodel the premises. However, it also found it was undisputed that the contractor completed the remodeling in May of 2018 and Mrs. Beasley's fall did not occur until July of 2018.[6] While Plaintiffs do not dispute that the contractor's services concluded in May, they contend:

> that the trial court made a critical factual error by concluding that there could have been no construction work or residue caused or created by Defendant post-May 2018. In fact, [Mr. Luc], Defendant's agent and business partner, was doing construction projects inside the building and could have created the floor residue in July 2018. The trial court did not have a factual record before it to support a ruling as a matter of law. There is nothing in the record that forecloses the possibility that Defendant did not create the hazard.

We respectfully disagree, because, as the trial court correctly found, there is no evidence that Defendant created the hazard that allegedly existed on the day that Mrs. Beasley fell. Nevertheless, Plaintiffs contend that Mr. Luc created the hazard when he installed new countertops and did some flooring work after the contractor had finished its work in May. However, the only evidence Plaintiffs presented concerning Mr. Luc's work relates to a conversation that Mrs. Beasley had with Mr. Luc during a previous visit, her second visit to the nail salon. As Mrs. Beasley explained in her deposition testimony in response to a question from Defendant's counsel:

---

[6] Specifically, the trial court found that "it is undisputed that the remodeling was completed in May of 2018. (Deposition of Angie Hoang page 9, line 15.) The incident in the case at hand occurred on July 12, 2018."

- 11 -

Q. So you mentioned granite countertops and I think you said something else.

A. Yeah. It was new countertops and flooring type work being done and I was just asking, hey, telling [Mr. Luc] that everything looked nice or whatever, you know, who did the work, just kind of joking and whatever, and he was, like, no, I did the work, and he went on to say, no, I really did the work, you know. He didn't say if he did all the work or anything like that, but he did say that he had did [sic] what I was talking about. He had did [sic] the work.

The record contains no additional evidence concerning Mr. Luc's construction work. Thus, while there is evidence that Mr. Luc performed some construction work after the contractor completed its work in May, there is no evidence that Mr. Luc or anyone else performed any construction work after Mrs. Beasley's second visit to the salon. Thus, contrary to Plaintiffs' contentions, there is no evidence to support a finding that Defendant created the alleged hazard at issue.

There being no proof that Defendant created the alleged hazard, we must consider whether Defendant had actual or constructive notice of the alleged condition. *See Blair*, 130 S.W.3d at 764. In this regard, the trial court made the following findings:

Court finds that there is no proof that the defendant created the condition or had actual or constructive notice of any condition. Even taking as true the Plaintiff's statement that there was a residue of some sort on the back of her black pants and shirt, the Court finds that there is no proof how long any alleged dust and/or other fibrous substance was on the floor or how it got on the floor. Based on all of the foregoing, the Court finds that there is no genuine issue of material fact and that Defendant has negated an essential element of Plaintiff's claim.

The record contains no evidence upon which to conclude that Defendant or its agents or employees had actual knowledge of the existence of a hazardous condition on the day in question. Thus, our final consideration is whether Defendant had constructive notice of the alleged hazard. "Constructive notice" is explained in detail in *Parker* as follows:

"Constructive notice" is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997) (quoting *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994)). Constructive notice may be established by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable

care, should have become aware of it. *Blair*, 130 S.W.3d at 764; *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986). Constructive notice may also be established by showing that the dangerous condition resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition." *Blair*, 130 S.W.3d at 765.

446 S.W.3d at 351–52.

Here, Plaintiffs contend that Defendant had constructive notice because its employees should have been aware of the alleged hazard due to the location of the area where Mrs. Beasley fell. Mrs. Beasley testified that the debris on the floor covered a 10 by 9 foot area of the nail salon. Further, Mr. Luc testified that the size of the store itself was 1,400-1,500 square feet. Mrs. Beasley also testified that she fell in the area located between the manicure stations and the pedicure stations, which Defendant's employees must regularly walk across to do their jobs. Thus, Plaintiffs argue that when the evidence is taken in the light most favorable to them, a jury could reasonably infer that Defendant should have known of the hazard because the area with the debris was frequently trafficked and large relative to the small size of the business.

We respectfully disagree. The record contains no evidence that the alleged hazardous condition existed for such a length of time that Defendant, in the exercise of reasonable care, should have become aware of it. *Blair*, 130 S.W.3d at 764 ("Constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition") (citation omitted). Nevertheless, where there is no proof as to the length of time a defective condition existed, a plaintiff may prove constructive notice by showing "a pattern of conduct, a recurring incident, or a general continuing condition indicating the dangerous condition's existence." *Id.* at 765–66 (quoting *Martin*, 946 S.W.2d at 320). In *Blair*, the court explained that "allowing plaintiffs to prove constructive notice in this manner relieves plaintiffs of the difficult burden of showing the duration of a particular occurrence[.]" *Id.* at 766. Thus, "when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence" and the premises owner has a duty "to take reasonable steps to remedy this commonly occurring dangerous condition." *Id.*

However, the record before us contains no evidence that the dangerous condition resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition." *See Id.* at 765. It is undisputed that the contractor's construction work concluded in May 2018, and there is no evidence that Mr. Luc did any construction work after Mrs. Beasley's second visit to the nail salon. Thus, Plaintiffs cannot establish constructive notice on this basis.

Accordingly, we affirm the trial court's decision to summarily dismiss Plaintiffs' complaint.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects and costs of appeal are assessed against the appellants, Marquica L. Beasley and Trent Beasley.

_____
FRANK G. CLEMENT, JR., P.J., M.S.